IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEILMED PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MED-SYSTEMS, INC., <br><br> Defendant. <br> _____/ | No. C 06-00964 CW <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Defendant Med-Systems, Inc., moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss this case for lack of subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 or, alternatively, pursuant to the Court's discretion. Plaintiff NeilMed Products, Inc., opposes the motion. The matter was heard on January 5, 2007. Having considered all of the papers filed by the parties and oral argument, the Court DENIES Defendant's motion.

BACKGROUND

On July 12, 2004, Plaintiff filed a trademark application,

1 Serial No. 78/449,153, with the United States Patent and Trademark
2 Office (PTO) for the mark "NEILMED'S SINUS RINSE A COMPLETE SALINE
3 NASAL RINSE KIT (stylized)" (Sinus Rinse) for use on
4 "pharmaceutical preparations for the treatment of nasal and sinus
5 ailments."  Pl.'s Opp. Ex. A.  On December 27, 2005, Defendant
6 filed a notice of opposition, Opp. No. 91168470, to Plaintiff's
7 trademark application, alleging that the proposed mark is similar
8 or identical to Defendant's earlier, competing mark "SINUCLEANSE
9 (stylized)" (SinuCleanse), Registration No. 2,205,705.  Pl.'s Opp.
10 Ex. B ¶ 1-3.  Plaintiff brought this case on February 13, 2006, to
11 obtain declaratory judgment from this Court that the Sinus Rinse
12 mark does not infringe on Defendant's SinuCleanse mark.

## LEGAL STANDARD

14 The Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, permits
15 a federal court to "declare the rights and other legal relations"
16 of parties to "a case of actual controversy."  28 U.S.C. § 2201;
17 see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th
18 Cir. 1986).  The "actual controversy" requirement of the DJA is the
19 same as the "case or controversy" requirement of Article III of the
20 United States Constitution.  American States Ins. Co. v. Kearns, 15
21 F.3d 142, 143 (9th Cir. 1993).

22 Under the DJA, a two-part test is used to determine whether a
23 declaratory judgment is appropriate.  Principal Life Ins. Co. v.
24 Robinson, 394 F.3d 665, 669 (9th Cir. 2005).  First, the court must
25 determine if there exists an actual case or controversy within the
26 court's jurisdiction.  Id.  Second, if so, the court must decide
27 whether to exercise its jurisdiction.  Id.

2

The Ninth Circuit has stated that trademark disputes have sufficiently ripened into an actual controversy under the DJA when "'the plaintiff has a real and reasonable apprehension that he will be subject to liability.'" Chesebrough-Pond's v. Faberge, 666 F.2d 393, 396 (9th Cir. 1982) (quoting Societe de Conditionnement en Aluminium v. Hunter Engineering Co., 655 F.2d 938, 944 (9th Cir. 1981)). In determining "if the threat perceived by the plaintiff is real and reasonable," the court focuses "upon the position and perceptions of the plaintiff" and "[t]he acts of the defendant [are] . . . examined in view of their likely impact on competition and the risks imposed upon the plaintiff." Id. If the plaintiff is engaged in the ongoing use of the allegedly infringing trademark, the showing of apprehension "need not be substantial." Societe de Conditionnement en Aluminium, 655 F.2d at 944. The Ninth Circuit established this approach with the caveat that the district court's exercise of its discretion under the DJA "will allow rejection of cases that are properly before the Patent and Trademark Office." Chesebrough-Pond's, 666 F.2d at 396.

In Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942), the Supreme Court identified several factors for the district court to consider when determining whether to exercise jurisdiction over a declaratory judgment action, and the Ninth Circuit has affirmed that "the Brillhart factors remain the philosophical touchstone for the district court." Government Employees Ins. Co. v. Dizol, 133 F.3d 1202, 1225 (9th Cir. 1998). "The district court should avoid needless determination of State law issues; it should discourage litigants from filing declaratory

3

actions as a means of forum shopping; and it should avoid duplicative litigation." Id. (internal citations omitted). The Ninth Circuit has also "suggested other considerations" in addition to the Brillhart factors that may assist in deciding whether to exercise jurisdiction, including:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.

Id.

## DISCUSSION

Defendant argues that this case should be dismissed because the mere filing of a notice of opposition to a trademark registration application with the PTO is insufficient grounds to give Plaintiff a reasonable apprehension of litigation to create federal jurisdiction. Plaintiff responds that Defendant's detailed notice of opposition, especially its use of factors relevant to trademark infringement and dilution, has given Plaintiff a reasonable apprehension of being sued if Plaintiff continues to use its Sinus Rinse mark. The Court agrees.

Defendant relies heavily on the language in Chesebrough-Pond's that "a simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit." 666 F.2d at 396. In that case, the defendant sent the plaintiff a letter requesting that it withdraw its application to trademark a line of men's toiletries and cosmetics that the

4

defendant argued was "confusingly similar" to its own or it would file an opposition with the PTO. Id. at 395. The Ninth Circuit, applying the test outlined in Societe de Conditionnement en Aluminium, held that because the defendant's letter threatening to bring an opposition with the PTO "stated a prima facie case for trademark infringement . . . [i]t was reasonable to infer from [the defendant's] letter a threat of an infringement action." Id. at 395-396.[1] Defendant here points to the fact that the defendant's threat in Chesebrough-Pond's had the actual effect of stopping the plaintiff from using its mark and the reasonableness of the plaintiff's apprehension was confirmed when the defendant brought counter-claims for trademark infringement in the plaintiff's declaratory judgment action. Id. at 396.

In the instant case, Defendant's notice of opposition alleged that Plaintiff's Sinus Rinse mark was "strikingly similar" to Defendant's SinuCleanse mark, that Plaintiff's mark was causing "widespread actual confusion" in consumers, that "the extent of potential confusion is substantial," that Plaintiff's advertising campaign intends to "intentionally and willfully deceive the public and free ride on [Defendant's] valuable good will," and that Plaintiff's "proposed mark is likely to cause confusion, to cause mistake, or to deceive consumers as to the sponsorship or origin of

---

[1] "A valid, registered trademark entitles the holder to prevent others from using the mark where (1) 'such use is likely to cause confusion, or to cause mistake or deceive,' 15 U.S.C. § 1114(1)(a) (so-called 'trademark infringement'), or (2) 'such use . . . causes dilution of the distinctive quality of the mark,' 15 U.S.C. § 1125(c)(1) (so-called 'trademark dilution')." Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062, 1067 (9th Cir. 2006).

5

[Plaintiff's] and/or [Defendant's] goods and services." Pl.'s Opp. Ex. B.  Like the defendant in Chesebrough-Pond's, Defendant in this case invoked the language of trademark infringement and dilution, which could give Plaintiff a reasonable apprehension that Defendant would sue Plaintiff if Plaintiff continues to use its Sinus Rinse mark.  From the Plaintiff's perspective, the risk of continuing to use its mark under these circumstances, for the years it may take to the PTO to address Plaintiff's application, is substantial.  In the event that it is eventually determined that the Sinus Rinse mark infringes upon the SinuCleanse mark, Plaintiff could face years of relinquished profits.

The differences between this case and Chesebrough-Pond's upon which Defendant relies, namely that Plaintiff has "not ceased using the mark at issue" and Defendant has not filed any counter-claims, do not save this case from the result in Chesebrough-Pond's.  Defendant is correct that in Chesebrough-Pond's the defendant's actions subsequent to its letter creating the threat of litigation "bolstered" the reasonableness of the plaintiff's perception.  However, the court's decision as to jurisdiction under the DJA did not depend upon this point.  See Chesebrough-Pond's, 666 F.2d at 397.  Also, the fact that Plaintiff's use of the allegedly infringing mark is ongoing actually makes the burden of showing apprehension lower.  See Societe de Conditionnement en Aluminium, 655 F.2d at 944.

Further, although Defendant has not yet filed any counter-claims, it has not agreed not to sue Plaintiff over the Sinus Rinse mark.  As the Ninth Circuit in Societe de Conditionnement en

6

1  <u>Aluminium</u> stated:

>   It is not relevant that [the defendant] attempted to withdraw its 'threat' after the filing of this lawsuit. We do think it relevant, in the light of the circumstances, that [the defendant] has not indicated that it will not sue [the plaintiff] for infringement or in any other manner agree to a non-adversary position with respect to the patent. Thus, dismissal of this suit would leave [the plaintiff] with the "Damoclean threat" of litigation hanging over its head.

655 F.2d at 945. Defendant's notice of opposition makes clear that it believes that Plaintiff's Sinus Rinse mark infringes and dilutes Defendant's registered SinuCleanse mark and Defendant has done nothing to "dispel such an inference." <u>Chesebrough-Pond's</u>, 666 F.2d at 397. The fact that Defendant has not yet acted upon its veiled threat does not erase the threat's effect.

Defendant cites a multitude of cases from other circuits in support of its argument that merely filing a notice of opposition with the PTO generally does not create a reasonable apprehension of litigation. These cases stand for the proposition that an opposition to the registration of a trademark is directed at the registration, not to infringement of the opposer's mark, and thus does not in itself give rise to a "reasonable apprehension" of being sued for trademark infringement in federal court. These cases do not address the situation where an opposition also pleads a case for trademark infringement or dilution, as Defendant's does.

Defendant contends that this Court's recent decision in <u>Freecyclesunnyvale v. Freecycle Network, Inc.</u>, 2006 WL 870688 (N.D. Cal. April 04, 2006), demands a finding that Plaintiff could not have a reasonable apprehension of litigation based on the instant facts. In <u>Freecyclesunnyvale</u>, this Court concluded that the

7

1  defendant's emails instructing the plaintiff to cease using its
2  allegedly infringing mark, or the defendant would report the
3  plaintiff to Yahoo! for "trademark and copyright infringement,"
4  gave the plaintiff a reasonable apprehension of litigation.  Id. at
5  *4.  There, the defendant actually followed through with its threat
6  and had the plaintiff's website shut down, denying the plaintiff
7  the opportunity to continue to use its mark.  Id.  Defendant's
8  argument that the operative facts in Freecyclesunnyvale are
9  stronger than those in the instant case does not avail it.  As in
10 Chesebrough-Pond's and Freecyclesunnyvale, Defendant expressed in
11 the clear terms of trademark infringement its opposition to
12 Plaintiff's use of its Sinus Rinse mark.  In fact, here, the threat
13 is more substantial.  Instead of reporting Plaintiff to a private
14 entity or merely threatening to bring an opposition proceeding
15 before the PTO, Defendant actually filed an opposition with the PTO
16 alleging intentional trademark infringement and dilution by
17 Plaintiff.
18      Finally, in addition to finding that an actual controversy
19 exists, the Court must decide whether to exercise its jurisdiction
20 over this case, considering the factors in Brillhart and Drizol.
21 In the instant case, there are no state law issues, only federal
22 trademark issues.  There is no evidence of duplicative litigation,
23 only this declaratory action and the pending opposition proceeding
24 with the PTO.  Despite Defendant's argument to the contrary, the
25 mere commencement of federal litigation does not constitute forum-
26 shopping or procedural fencing, however expensive litigation might
27 be.  Moreover, this declaratory action would "settle all aspects of

8

the controversy" and "serve a useful purpose in clarifying the legal relations at issue."  There is no need to wait perhaps years for the PTO to decide on the registration of Plaintiff's Sinus Rinse mark in order to resolve the issue of whether Plaintiff's mark infringes on Defendant's SinuCleanse mark.  Defendant can bring an action for infringement regardless of the PTO's determination.  See Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 853-54 (2nd Cir. 1988)(outcome of PTO proceeding does not affect legal determination of infringement claim; district court must still independently decide validity and priority of marks and likelihood of consumer confusion).  Therefore, the Court will exercise its discretion to take jurisdiction over this declaratory judgment action in order to resolve the trademark infringement and dilution claims raised by Defendant in its notice of opposition before the PTO.

## CONCLUSION

For the forgoing reasons, the Court DENIES Defendant's motion to dismiss (Docket No. 22).

IT IS SO ORDERED.

Dated:    1/10/07

_____
CLAUDIA WILKEN
United States District Judge